The PRESIDENT.
The case of Medtard v. Skipwith, was three times argued. That was an action of debt on a bond in the Borough Court of Richmond, which was stated in the declaration, to have been executed in the city of Richmond; without al- *421 (edging it to be within the jurisdiction of the court. The judgment of the District Court, affirming that oí the County Court rendered for the plaintiff, was affirmed in this.
There were various questions agitated by the court upon that occasion, and different -opinions given upon them, most of which were by a bare majority. Among others was this: whether the words, within the jurisdiction of the court were indispensible in every declaration in a Corporation Court, or might be supplied by other words equivalent to them? That they might be so supplied, was the opinion of four judges. But a bare majority determined, that in that case, the words were not supplied, but that the omission was cured by the confession -of judgment. The same majority also decided that the £5 damages laid in the declaration, were to be added to the ¿100 debt, which deprived that court of its jurisdiction. The judgment was at first reversed ; but, on the third argumént, a worthy judge -changed his opinion, and it was finally affirmed.
At the time this writ of error was moved for, if that case remained as authority — the -question would have been reduced to a single point, namely, whether a judgment upon a verdict were equal to one given upon the confession of the party?
But as there was a diversity of opinions, and various points agitated upon that occasion, the court were willing to hear the matter argued at large, as if that case had not been determined.
The case has been entered into much at length, and the subject having been maturely considered by the court, a bare majority are of opinion, that the judgment of the .District Court is right in reversing that ■of the Borough Court, because the speaking of the words, tho’ alledged to have been in the city, is not alledged to have been within the jurisdiction of the court. That -according to uniform precedents, those precise words ought to be used, in all declarations in courts of inferior jurisdiction.
As the judgment of the court is founded upon precedents alone, and I feel a full conviction, that they if taken in a collective '“'view, prove the direct contrary, I am compelled, painful as it is, to differ in opinion from my worthy brethren, and to give my reasons for it.
Domestic precedents appear to me to stand thus:
It is said, that no case has been determined upon this point in the former General Court, nor do I recollect one.
In that court, since the revolution, one is mentioned; that of Pride v. Hill, which was an ejectment in the Borough Court of Petersburg; for a lot in that town. The demise was laid to be made in the town, of a lot of ground situated there. — The plaintiff had a verdict and judgment; but, upon an appeal to .the General Court, it was reversed ; because it was not alledged, to be within the jurisdiction. This was said to be a leading case, in consequence of which, other cases were uniformly decided the same way; but the names or number of them was not stated: and if there were error in that case, which was a local action for a house in town, perhaps within the view of the court or jury, when trying the cause, there could be little doubt in a transitory action, where those words were omitted.
In the District Courts, where the same judges act separately, we find they are not uniform in their decisions upon the point; The judgment in Medtard v. Skipwith being different. But how comes this court to be bound by precedents of the General Court, (however respectable they may be) whose judgments this court are authorised to control? If so, and they have erred but once, we may correct it; but if they have repeated it, shall it cease to be error?
In Picket v. Claiborn, this opinion did not prevail. The General Court reversed the judgment in that case, because there was no declaration, although there was a confession of judgment. This court, tho’ forty similar precedents were mentioned, reversed their judgment.
This question is placed upon the authority of English precedents. I shall presently consider those cases at large, but let us first enquire how far we are bound by their authority. The ordinance of the convention in 1776, declares all the statutes of England prior to the 4th of James 1st, which were of a general nature, applicable to Virginia, and not local to that country, to be in force here.
Applying the principle of that ordinance to the force of precedents from thence, if it shall appear, that the rule now contended for (admit its existence) grew out of the local situation *of the inferior courts in that country, and was grounded upon considerations in which ours totally differ from theirs, then the precedents cannot bind us.
The courts of inferior jurisdiction in that country are various, and differ much in the nature of their constitutions.
1st, The Spiritual Courts, limited b3' the subject in dispute, to matters of a spiritual nature.
2d, The Admira lty ‘ Courts, confined to cases arising upon the high seas — mariners may sue for their wages in the common law courts, their contracts being made on land; but they may and generally do sue in this court, because here they may all join, and charge the ship.
3d, The County and Sheriff’s courts, limited to the county, and to suits of the value of 40s.
4th, The Marshalsea Court, limited to residence within twelve miles of the palace.
5th, Corporation Courts, Royal Eran-chises, and Courts of Manors, ail confined to residence within the jurisdiction.
6th, The Pie Powder Courts, limited as to time; the persons and subject of dispute which must arise during the fair between parties attending there.
These courts and many others, which it would be too tedious to enumerate, derive *422 their existence from different sources — Prescription, Charters, and acts of Parliament, &c. Again, they differ as to the manner in which their judgments are controled, either before or after they are rendered.
Before: — As 1st by plea to the jurisdiction ; or 2d, by a prohibition from a Superior Court.
After: 1st by writ of error; in cases where such writs lie:
2d By prohibition: where error does not lie, as to the admiralty and Ecclesiastical Courts.
3d By writ of false judgment to the Base Courts: but to what Courts they apply that base term, I cannot say with accuracy.
In this complex view of the inferior jurisdictions, it would have been difficult in declarations, to describe the various circumstances on which the jurisdiction depended. It therefore became a practice, founded in convenience and propriety, to al-ledge in the declaration, that the cause of action arose at such a place, within the jurisdiction of the court.
In Virginia, we have no Courts, deriving their origin from Prescription, or Charter. They are all created by the legislative acts, defining their powers, and their jurisdictions. The *true criterion of distinction between our superior and inferior courts, seems to be appellate jurisdiction : placing the District Courts and all above them, in the first class; and in the latter the County and Corporation Courts; coupled together in principal; and referred to, as in the same predicament, in the laws allowing appeals, which sometimes use the expressions !:from the County and Corporation Courts” at other times “the county and other inferior courts.”
Their jurisdictions are described in the same words, as to limits, tho’ not as to extent. These words “within the jurisdiction” have never been used, or considered as necessary, in the former. — -It is sufficient to alledge the cause to have arisen in the county. — -I cannot therefore conceive, why those words should be necessary, to bring the cause within the prescribed jurisdiction of the Corporation Courts.
But let us now suppose that these courts are like to inferior Courts in England: — it will be found (I conceive) that the precedents are misunderstood. I have said, that the form of the declarations there, were founded in convenience and propriety. But that ever a judgment was there reversed, because those precise words were omitted, if a place was alledged, remains I think not only to be proved, but the contrary is to my mind evinced by the cases produced, if the principle of them, instead of the sound of the reporters words be attended to.
I state this as a fact — that in all the cases relied upon, no place was laid at which the gist (as they call it) of the action arose. And from hence, I infer, that the decisions in those cases turned upon the want of a venue, which was not to be presumed in inferior courts, nor did the statute of Jeo-fails, which cures the want of it, extend to those courts. But do not those statutes extend to Corporation Courts here?
1 Sand. 73 is referred to as a leading case. But the error in that was, that no place was laid for the delivery of the goods. In 2 Lev. 87. no place was alledged as to the sale and delivery, and the decision clearly turned upon the want of Venue. 1 Ventr. 2, is liable t^> the same observation — no place was laid — for tho’ the demise was laid at Middle-row, the declaration did not state, where Middle-row was. Ib. 72. Bernard and Bernard — it did not appear where Hull Bridge was. 2 Ld. Ray, 1310, the declaration does not alledge where the pond was. Durn. and East. 151. It is not stated that the money was had and received there. In 2 Wils. 16, if it had been stated that the goods had been delivered at Aylesbury, the judgment I think *would have been different. But as to these cases my position that they turned upon the want of venue, is deduced by inference only.
Other cases plainly prove to my mind the solidity of the distinction.
Bernard v. Bernard 1 Vent. 72, is no authority either way, as the cause finally went'off, the court being divided. Waldock v. Cooper, 2 Wils. 16 before mentioned, produces in my mind irresistible conviction, that if the declaration had alledged the goods to have been delivered at Aylesbury, it would have been good, without expressly laying it, to have been within the jurisdiction of the court.
Lancaster v. Lovelace 12 Mod. 536, is directly in point, the declaration al-ledged the cause of action to have arisen at Canterbury. — On a writ of error it was objected, that it did not appear, that the jurisdiction was co-extensive with the city: an objection which could not be made here. But it was said, the defendant by coming in, and answering, had waived the advantage. This proves the principle I am endeavouring to support; that if a place be laid, and there be no plea to the jurisdiction, it is too late after judgment, to question the jurisdiction. In Hardwicks cases 116 there is one, in which the question was, whether the residence of the party, on which depended the jurisdiction, was defectively alledged (which is the most that can be urged in this case) so as to have been good on a demurrer. Yet after verdict, it was presumed to have been proved. Mr. Marshall in this case distinguished between the original judgment of amercement, and the action of debt upon the judgment. At the time, I thought there might be some weight in this argument, but it does not now appear to me a sound one. The words, good on demurrer and the proof presumed,' must respect the new action, and not the amercement; from the conclusion of the judges, that without such proof, the amercement would have been coram non judice, and void: therefore no debt.
It is laid down in 2 Ventr. 333, that a party shall never be allowed to assign for *423 error, that which he might have taken advantage of by pleading.
The modern cases all run in a train of presuming every thing after a verdict, according to the spirit of the statute of Jeofails. They further prove to me, that all the cases cited, turn upon the want of a venue, which the statutes of Jeofails do not cure in proceedings in those inferior courts, and by no means upon the want of those particular words.
*Since then the precedents are founded on reasons applicable only to the nature of inferior courts in England, (in every respect unlike to our Corporation Courts,) to which our act of Jeofails does certainly extend, as well as to the County Courts, the principle of presuming every thing after verdict, which might have been proved, remains in cases of this sort, as in others, uninfluenced by those precedents.
Would it not be strange, that after a fair trial, where the defendant waived all exceptions not connected with the merits, when if they had been well founded, he might have availed himself of them; and after a jury has assessed the damages sustained by the injured party, a superior court shall declare, that for the want of a few cabalistical words, which, if inserted, every man of common sense would pronounce to be tautologous, the plaintiff shall not have the effect of his judgment? X say tautologous, because if the cause of action arose in the city, the law declares it to be within the jurisdiction of the court.
However, the other judges are impressed with a different view of the subject, and are of opinion that the judgment of the District Court is right. After having discharged my conscience, I shall acquiesce in the opinion and not stir the question again, unless the other judges should, on any future occasion, wish to reconsider it.*
Judgment of the District Court affirmed.

In the fall term of 1792, the case of Winder r. Eddy, was decided npon the same principles. The suit in that case was brought in the corporation Court of Fredericksburg: The declaration was headed, “corporation court of Fredericksburg, to wit:" and laid the cause of action and assumpsit "at the corporation aforesaid,” but the words within the jurisdiction of the court were omitted. —Note in Original Edition.